

**KALIELGOLD PLLC**
Sophia G. Gold (SBN: 307971)
sgold@kalielgold.com
490 43rd Street, Suite 122
Oakland, CA 94609
Telephone: (202) 350-4783

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

*Attorneys for Plaintiff and the Proposed
Class*

Phillip M. Black (SBN 308619)
**WOLF POPPER LLP**
*pblack@wolfpopper.com*
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

LOUIS MOSES, individually and on
behalf of all others similarly situated,

          Plaintiff,

  v.

ROKU, INC.,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No: **'26 CV 1422 WQH MSB**

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiff Louis Moses ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his counsel, brings this complaint ("Complaint") against Roku, Inc. ("Roku," the "Company," or "Defendant"), and in support thereof makes the allegations herein based upon personal knowledge with respect to himself, and on information and belief and the investigation of counsel as to all other matters.

## <u>NATURE OF THE ACTION</u>

1.      Plaintiff files this class action lawsuit for damages and equitable relief against Roku, Inc. ("Roku," the "Company," or "Defendant") on behalf of himself and all persons worldwide who purchased, owned, used, or leased one or more of Roku's Smart Home Cameras ("Roku Cameras") (defined herein) prior to July 16, 2025 (the "Class" as defined herein), and a California subclass, for breach of contract, breach of implied warranties, unfair, deceptive, and misleading consumer practices, violations of the Computer Fraud and Abuse Act, breach of quasi-contract, unjust enrichment, and trespass to chattels at the expense of Plaintiff and the Classes.

2.      On October 17, 2022, Roku launched a suite of smart home products, including indoor and outdoor security cameras and video doorbells for home monitoring ("Roku Cameras").

3.      Every Roku Camera came with a motion and sound detection feature, which sent users alerts within seconds of the Roku Camera detecting motion or sound ("Motion Alerts") through the Roku Smart Home mobile app ("Roku App") for iOS and Android.

4.      Users with a Roku Smart Home Subscription ("Roku Subscription") received access to video recordings of detected motion or sound that corresponded with Motion Alerts ("Motion Recordings"). Users without a Roku Subscription received access to still images of detected motion or sound that corresponded with Motion Alerts ("Motion Snapshots").

5.      Despite marketing Motion Recordings and Motion Snapshots corresponding with Motion Alerts as a key surveillance feature for home security, Roku quietly removed the Motion Snapshot feature from all Roku Cameras. Thus, users without a Roku Subscription can no longer review what motion or sound triggered the Motion Alert, unless they purchase a Roku Subscription.

6.      Defendant's unfair conduct caused Plaintiff and other purchasers of Roku Cameras to lose this critical feature from their Roku Cameras. Without this Motion

Snapshot feature, Roku Cameras are worth less than they were when originally purchased. Moreover, Roku improperly coerced its customers into purchasing a Roku Subscription to maintain the utility of their Roku Cameras.  Had Plaintiff and other purchasers known that they would lose access to this feature, they would not have purchased Roku Cameras, or would have paid significantly less for them.

## THE PARTIES

7.     Plaintiff Louis Moses is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in San Diego, California.

8.     Defendant Roku, Inc. is a consumer technology company incorporated in the State of Delaware and with its principal place of business in San Jose, California.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because this action is a class action in which there are 100 or more Class members; the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs; and at least one member of the Class is a citizen of a state different from Defendant.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction here and regularly conducts business in this District, and because the Plaintiff resides in this District.

## FACTUAL ALLEGATIONS

**I.     Roku Launches its Smart Home Cameras and Smart Home Subscription Plan**

11.     On October 17, 2022, Roku launched a suite of smart home products, including the following indoor and outdoor security cameras and video doorbells ("Roku Cameras")[1]:

---

[1] https://www.roku.com/products/smart-home (accessed November 18, 2025 via Wayback Machine at URL

CLASS ACTION COMPLAINT

- Indoor Camera SE (Wired)
- Indoor Camera 360° SE (Wired)
- Outdoor Camera SE (Battery)
- Outdoor Wired Camera SE (12.5 foot Power Adaptor)
- Video Doorbell & Chime SE (Wired)
- Wire-Free Video Doorbell & Chime SE (Battery or Wired)
- Floodlight Camera SE (Wired)

  

  

---

https://web.archive.org/web/20221017040759/https://www.roku.com/products/smart-home).

CLASS ACTION COMPLAINT



Roku also launched the Roku App, which allowed users to control and manage their Roku Cameras remotely.

12.     For certain additional features, users could purchase a Roku Smart Home Subscription ("Roku Subscription"):

**October 12, 2022[2]**

|  | With Subscription | Without Subscription |
|---|---|---|
| Live streaming | ✓ | ✓ |
| Cloud recording | Video clips stored for 14 days | Images only |
| Motion alerts | ✓ | ✓ |
| Sound alerts | ✓ | ✓ |
| e & CO alarm detection | ✓ | ✓ |
| Person detection | ✓ |  |
| Package detection | ✓ |  |
| Vehicle detection | ✓ |  |
| Pet detection | ✓ |  |
| Event filtering | ✓ |  |

---

2     https://www.roku.com/products/smart-home/smart-home-subscription     (accessed November 18, 2025 via Wayback Machine at URL https://web.archive.org/web/20221012130441/https://www.roku.com/products/smart-home/smart-home-subscription).

CLASS ACTION COMPLAINT

13.     Included with every Roku Camera was the motion and sound detection feature, which sent users alerts within seconds of the Roku Camera detecting motion or sound through the Roku App ("Motion Alerts"):



14.     With a Roku Subscription, users received access to the Roku Cloud, which saved video recordings of detected motion or sound that corresponded with Motion Alerts ("Motion Recordings"). These Motion Recordings were stored on the Roku Cloud and were accessible in the "Events" tab on the Roku App for 14 days. For example, if a subscribed user clicked on a Motion Alert notification, they would be immediately directed to the Motion Recording in the Roku App.

15.     Without a Roku Subscription, users received access to still images of detected motion or sound that corresponded with Motion Alerts ("Motion Snapshots"). These Motion Snapshots were stored on the Roku Cloud and were accessible in the "Events" tab on the Roku App. For example, if a Roku Camera detected motion or sound, a user without a Roku Subscription would receive a Motion Alert notification on their mobile device that, if clicked on, would direct them to the Motion Snapshot in the Roku App.

16.     The Motion Alerts banner displayed a preview image of the detected motion for both Motion Recordings and Motion Snapshots:

CLASS ACTION COMPLAINT

**Motion Recordings Banner[3]**      **Motion Snapshots Banner[4]**

 

17. In its advertising, Roku marketed Motion Alerts as a key feature of Roku Cameras. For example, the webpage advertising Roku's Outdoor Camera SE (Battery) prominently displayed the Motion Alerts feature[5]:

---

[3] https://www.roku.com/products/smart-home/smart-home-subscription (accessed on November 18, 2025 via Wayback Machine at URL https://web.archive.org/web/20221017204133/https://www.roku.com/products/smart-home/smart-home-subscription).

[4] https://www.roku.com/mobile-app/smart-home (accessed on November 18, 2025 via Wayback Machine at URL https://web.archive.org/web/20221017204135/https://www.roku.com/mobile-app/smart-home).

[5] https://www.roku.com/products/smart-home/cameras/roku-outdoor-camera-se (accessed November 18, 2025 via Wayback Machine at URL https://web.archive.org/web/20221017204125/https://www.roku.com/products/smart-home/cameras/roku-outdoor-camera-se.

CLASS ACTION COMPLAINT



18.     The webpage also emphasized Motion Alerts further down the product page under "More smart features for easy home monitoring." The icon displayed a person and sound "captured" within a camera frame:

**Motion & sound detection**

Get an alert when your camera detects motion or sound. Smart sensors detect body heat, so you don't get false alerts for trees swaying in the wind.

19.     Under "Frequently Asked Questions," the webpage also marketed the Roku Cameras as superior to surveillance cameras that simply "watch and record continuously but do not alert to activity[,]" because the Motion Alerts feature "allow[ed] users to take action in real time."

| What's the difference between surveillance cameras and security cameras? |
| --- |
| Surveillance cameras watch and record continuously but do not alert to activity. That means to view an event, you have to go through the entire recording. That's a lot of work! Security cameras, like all Roku cameras, go one step further to keep your home safe and secure. They have sensors that alert you to motion or sound and allow you to take action in real time. With a Roku Smart Home subscription, your Roku camera records and stores these events, allowing you to view them for up to 14 days. |

20.    The Motion Recordings and the Motion Snapshots were key security components to the Motion Alerts because they allowed users to promptly view motion events and thus, "take action in real time." Additionally, they allowed users to view recorded motion events (*i.e.*, image or video) as opposed to going "through the entire recording" for a select motion event.

21.    Roku marketed its Roku Cameras as having access to the Motion Snapshots feature without a subscription from October 12, 2022 (*see supra*) through at least July 2, 2025.

**July 2, 2025**[6]

|  | With Subscription | Without Subscription |
| --- | --- | --- |
| Live streaming | ✓ | ✓ |
| Cloud recording | Video clips stored for 14 days | Images only |
| Motion alerts | ✓ | ✓ |
| Sound alerts | ✓ | ✓ |

22.    However, by at least July 11, 2025, Roku's website no longer listed Motion Snapshots as a feature available to users without a Roku Subscription.

---

[6] https://www.roku.com/products/smart-home/smart-home-subscription (accessed on November 18, 2025 via Wayback Machine at URL https://web.archive.org/web/20250702102939/https://www.roku.com/products/smart-home/smart-home-subscription).

CLASS ACTION COMPLAINT

**July 11, 2025**[7]

| | With Subscription | Without Subscription |
|---|---|---|
| Live streaming | ✓ | ✓ |
| Cloud recording | Video clips stored for 14 days | |
| Motion alerts | ✓ | ✓ |
| Sound alerts | ✓ | ✓ |

## II.   Roku Quietly Removes Motion Snapshots from all Smart Home Cameras

23.    On July 16, 2025, Roku quietly, and without warning, suspended access to the Motion Snapshot feature from all Roku Cameras.  Accordingly, users without a subscription now only receive Motion Alerts with no corresponding image to determine what triggered the Motion Alert.  If users with a Roku Subscription decide to cancel their subscription, they would no longer be able to review any prior motion events, including Motion Snapshots.

24.    Although all users have access to live feeds, they do not have access to past motion events without a Roku Subscription or an inserted micro-SD card.[8]

25.    Despite removing this key feature, Roku did not offer compensation, discounts, or anything else to purchasers of Roku Cameras.  Rather, Roku saves money

---

[7] https://www.roku.com/products/smart-home/smart-home-subscription (accessed on November 18, 2025 via Wayback Machine at URL https://web.archive.org/web/20250711010204/https://www.roku.com/products/smart-home/smart-home-subscription).

[8] Micro SD cards are not included with the purchase of any Roku Camera.  Users cannot review Motion Recordings saved on micro-SD cards through the Roku App.  In order to review Motion Recordings, users must remove the micro-SD card from their Roku Camera and connect it to a computer.

CLASS ACTION COMPLAINT

1  by not having to maintain a Cloud database for users of Roku Cameras without a Roku
2  Subscription.

3      26.    Plaintiff was entitled to receive full access and utility of his Roku Camera
4  and its promised features upon purchase.  By quietly removing the Motion Snapshots
5  feature, Roku acted deceptively, dishonestly, and unfairly.  In doing so, Roku breached
6  its contract with Plaintiff, violated the Computer Fraud and Abuse Act, and violated
7  consumer protection statutes and/or common law as further alleged herein.

8      27.    Roku's conduct has been widely criticized as dishonest and unfair.
9  Complaints from consumers regarding Roku's conduct has proliferated on the internet,
10  including on Reddit and Roku's own Community Support website.

11      28.    On July 16, 2025, a post entitled "Subscription needed for image events"
12  on Roku's Community Support website stated "They have always showed me the
13  image of the event after getting the notification but just today (16 July 2025) it no
14  longer always me to see the image. Do I have to have a subscription to see the image
15  in the app?"[9]  The post received over 163 replies, many of which complain of Roku's
16  conduct:

17      a.    A reply on July 19, 2025 reads: "As of July 16, 2025, Roku quietly
18          removed the ability to see motion-triggered images or recordings unless
19          you pay for a subscription. I confirmed this with Roku support. They said
20          the feature was removed because 'still images were underutilized' and that
21          now you need a Roku Smart Home Subscription to see events. There was
22          no warning, no email, no notification — it just stopped working.  You'll

---

[9]  https://community.roku.com/discussions/smart-home-devices/subscription-needed-for-image-events/1084985 (dated July 16, 2025, last accessed November 21, 2025).
This post has since been deleted and is now available on the Wayback Machine at:
https://web.archive.org/web/20250805070628/https://community.roku.com/discussions/smart-home-devices/subscription-needed-for-image-events/1084985.

still get motion alerts, but now they don't include any image or video unless you're paying monthly. That kind of defeats the purpose of a security camera … I used to rely on those snapshots to check what triggered alerts — now it just says 'motion detected' with no info unless I'm watching live. I've already filed a complaint with the BBB, and I encourage others to do the same."

b.    Another reply on July 19, 2025 reads "I can tell you one thing I will never buy any products that have to do with Roku again. There was no heads up no nothing. When I bought my cameras I was under the impression of what I was buying was permanent. Definitely going to do a consumer protection issue on it. If anything they should at least leave the still photos for the people that have had these cameras before they took it off."

c.    Another reply on July 19, 2025 reads: "Just plain predatory on the part of Roku."

d.    Another reply on July 18, 2025 reads "Lots of Roku cameras showing up for sale on Marketplace suddenly.  People are fed up."

e.    Another reply on July 19, 2025 reads: "I talked to them yesterday and told them I don't need a camera that only shows live streams. I think they should buy my cameras back if they want to delete a service that sold me on there [sic] cameras. I will tell everyone not to buy and report to better business services."

29.    A post to Reddit on July 20, 2025, reads: "They intentionally removed the ability to see motion-triggered events (even just still images) unless you pay for their Smart Home subscription. This was previously free and working fine for months. They rolled this out without telling anyone — no email, no app message, nothing.  Basically, they stripped a major feature and just left the notifications in place, even though they don't show you anything now. That feels really shady, especially for people relying on these cameras for home security. If something were to happen, there's no record

CLASS ACTION COMPLAINT

anymore … There are a bunch of users on Roku's forums reporting the same thing, all from this week … Anyway, just wanted to warn people. This change came out of nowhere and left a lot of us with basically useless hardware. Hope this helps someone before they buy in."[10]

30.    The online complaints alleged above are illustrative and not an exhaustive recounting of the many online complaints against Roku for the conduct alleged herein.

31.    Plaintiff Louis Moses purchased a Roku Camera in September 2024.

32.    Prior to purchasing the Roku Camera, Plaintiff reviewed Roku's marketing materials, product descriptions, and representations regarding Roku Camera's features, including the availability of Motion Alerts with corresponding Motion Snapshots without the need for a paid subscription.

33.    Roku's representations regarding the availability of Motion Snapshots as a standard, non-subscription feature were material to Plaintiff's purchasing decision and formed part of the basis of the bargain between Plaintiff and Roku.

34.    Plaintiff reasonably relied on these representations in deciding to purchase the Roku Camera and in determining the price Plaintiff was willing to pay.

35.    At the time of purchase, Plaintiff understood and expected that the Roku Camera would provide Motion Alerts with corresponding Motion Snapshots, allowing Plaintiff to visually identify what motion or sound triggered the alert without requiring an ongoing paid subscription.

36.    Plaintiff used the Roku Camera in its intended manner and for its intended purpose. Plaintiff initially received the Motion Snapshots feature and relied on that functionality as part of his home security system.

---

[10]https://www.reddit.com/r/assholedesign/comments/1m4svbw/roku_quietly_removed_motion_snapshots_unless_you/ (dated July 20, 2025; last accessed November 21, 2025).

CLASS ACTION COMPLAINT

37.    On or about July 16, 2025, Roku, without prior notice, removed the Motion Snapshots feature for non-subscription users, including Plaintiff. Plaintiff received no prior notice, no email, no in-app notification, and no other communication from Roku indicating that this feature would be removed.

38.    Following this change, Plaintiff continues to receive Motion Alerts but is no longer able to view what triggered those alerts without purchasing a Roku Subscription, rendering Plaintiff's Roku Camera significantly less valuable and useful than when originally purchased.

39.    As a result of Roku's removal of the Motion Snapshots feature, Plaintiff can no longer determine whether alerts correspond to meaningful security events without paying additional fees.

40.    Plaintiff has suffered economic injury as a result of Roku's conduct, including but not limited to overpaying for the Roku Camera and/or receiving a product worth less than what was promised at the time of sale.

41.    Plaintiff would not have purchased the Roku Camera, or would have paid substantially less for it, had he known that Roku would later remove the Motion Snapshots feature or condition it on a paid subscription.

## III.    Roku's Unilateral Removal of Motion Snapshots from all Smart Home Cameras Constitutes a Deceptive "Software Tethering" and "Bricking" Practice

42.    Manufacturers are incentivized to render devices significantly less functional, and even sometimes obsolete, so that they can manufacture and sell new ones. Increasingly, by failing to support otherwise functional devices with the promised software functionality included at sale, companies like Defendant unilaterally, and, prematurely, decide that devices are less useful or nonfunctional even though the actual hardware of the device itself has not run its useful life and functions perfectly. Left with a device that is either useless or with less software functionality than originally advertised to consumers at the point of sale, consumers are forced to buy updated

devices—often from the same manufacturers.

43.    In a recent staff report, the Federal Trade Commission ("FTC") acknowledged the harm that results when manufacturers cut back on making software updates to "smart" products like the Roku Cameras, eventually turning those products in non-functional "bricks" with limited to no use. As the FTC explains, the failure to provide software and the failure to disclose the duration of software support is a deceptive practice that cause consumer harm that they cannot avoid:

> Manufacturers marketing a device as having certain features and then subsequently failing to provide software updates needed to maintain those features raises concerns about consumer harm resulting from deceptive practices. A representation, omission or practice is deceptive and violates the FTC Act if it is material and likely to mislead a consumer acting reasonably under the circumstances. Thus, if a manufacturer makes an express or implied representation regarding how long the product will function or be useable, it may be a deceptive practice if the manufacturer fails to disclose how long it will provide necessary software updates.
>
> Similarly, the failure to provide software updates or the failure to disclose the duration of software support raises concerns about harm consumers cannot avoid. A practice is unfair and violates the FTC Act if it is likely to cause substantial injury that could not be reasonably avoided by consumers and the injury is not outweighed by any offsetting consumer or competitive benefits that the sales practice also produces. Thus, when evaluating a manufacturer's failure to provide updates or its failure to disclose the duration of software support it is appropriate to consider the scope of injury caused by the failure, whether this injury is reasonably avoidable by consumers, and whether there may be any offsetting benefits arising from the failure to provide software updates or disclosures about the duration of software support.[11]

44.    Non-profit organization, Truth in Advertising ("TINA"), similarly acknowledged this practice as an increasingly prevalent false advertising practice it calls "software tethering," "which is when a manufacturer uses software to control how

---

[11] *Smart Device Makers' Failure to Provide Updates May Leave You Smarting,* FTC Staff Perspective, November 2024, available at https://www.ftc.gov/system/files/ftc_gov/pdf/smart-device-makers-failure-to-provide-software-updates-may-leave-you-smarting.pdf [https://perma.cc/EW9W-TENT].

a connected device functions after purchase, if it continues to function at all," and may range from "taking away features that were advertised at the time of purchase or completely 'bricking' a device through software updates[.]"[12]

45.    Consumer Reports also highlighted the concern behind companies' lack of transparency in disclosing the lifespan of a connected smart device before consumers commit to purchasing:

> The refusal to disclose how long a consumer can expect their connected appliances to stay secure and retain the exciting software-based functions that a consumer may have paid extra for is an example of how efforts to turn everyday devices into internet-connected computers have left a regulatory loophole that allows manufacturers to infringe on a consumers' ability to truly own a product. . . .

> And consumer should know when this potential loss of features or functions will happen before they plunk down their hard-earned cash on a device or appliance. Only when consumers can see how long a manufacturer plans to stand by a connected product can they make an informed decision about what they are spending their money on. Absent this information, a consumer could spend thousands on a large appliance, only for the features they rely on to stop working in a few years.[13]

46.    In response to this rapidly growing harm, Consumer Reports amongst several other groups have called on the FTC "to create clear guidance to address the issue of software tethering which leads to several consumer harms, including . . . companies selling connected devices only to render them nonfunctional later using software." This practice of "'bricking' a connected device purchased by a consumer in

---

[12] *2025 Deceptive Ad Trends,* Consumer News, Truth in Advertising.org, January 6, 2025, available at https://truthinadvertising.org/articles/2025-deceptive-ad-trends/ [https://perma.cc/J2B2-TKAV].

[13] *When Will Your Smart Appliance Turn Dumb? A Lack of Transparency Leaves Consumers in the Dark,* Consumer Reports, September 25, 2024, available at https://innovation.consumerreports.org/when-will-your-smart-appliance-turn-dumb/ [https://perma.cc/49A9-YQFF].

1  many cases [is an] unfair and deceptive practice[.]"[14]

2      47.    The FTC Letter explains "how companies are using software tethers in

3  their devices to infringe on a consumer's right to own the products they buy."[15] "This

4  software-server connection tethers the device to the manufacturer, giving the

5  manufacturer post-purchase control of the software and changing the nature of

6  ownership."[16] As a result, "[c]onsumers increasingly face a death by a thousand cuts as

7  connected products they purchase lose their software support or advertised features that

8  may have prompted the original purchase."[17]

9      48.    Additional recent examples of software "bricking" in the consumer

10  marketplace include Spotify's connected Car Thing device that lasted only 22 months,

11  the iKamand temperature regulating device that was discontinued within the same year,

12  Meta's Portal smart video-calling device, Google's Dropcam cameras, and Amazon's

13  Halo health and wellness wearable devices, to name a few.[18]

14  **CLASS ALLEGATIONS**

15      49.    This action is brought by Plaintiff, for himself and on behalf of all others

16  similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

17  Plaintiff seeks to represent a class of all persons worldwide who purchased one or more

18  of Roku's Smart Home Cameras prior to July 16, 2025, and still owned the device on

19  or after that date (the "Class").

20

21

22  _____

23  [14]    FTC    Letter,    September    5,    2024,    available    at

24  https://advocacy.consumerreports.org/research/group-letter-ftc-software-tethering/
[https://perma.cc/GKS7-SSNQ].

25  [15] *Id.*

26  [16] *Id.* (citations omitted).

27  [17] *Id.*

28  [18] *Id.* (citations omitted).

50.    Plaintiff also seeks to represent a subclass of all persons in California who purchased one or more of Roku's Smart Home Cameras prior to July 16, 2025, and still owned the device on or after that date (the "California Subclass").

51.    Unless specifically indicated otherwise, all allegations below concerning the Class include and apply equally to the California Subclass, individually and collectively.

52.    Excluded from the Class are Roku and any person, firm, trust, corporation, or other entity related to or affiliated with any of Roku's partners, subsidiaries, affiliates or joint ventures.

53.    The members of the Class are so numerous and dispersed that it would be impracticable to join them individually.  At all relevant times, there were thousands of purchasers, owners, users, or leasers or Roku Cameras.  The precise number of Class members and their identities are unknown to Plaintiff at this time but can be determined through discovery.

54.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to Classes are:

a.    Whether Roku removed the Motion Snapshots feature corresponding with Motion alerts dishonestly, unfairly, and/or in bad faith;

b.    Whether Roku breached its contract with purchasers of Roku Cameras;

c.    Whether Roku breached the implied warranty of merchantability;

d.    Whether Roku's conduct violates California's Consumer Legal Remedies Act or Unfair Competition Law;

e.    Whether Roku's conduct violates the Computer Fraud and Abuse Act;

f.    Whether, as to the California Subclass, Roku's conduct violates the state consumer protection statutes alleged herein;

g.    Whether Roku's wrongful conduct caused Plaintiff and the Class damages;

h.    The amount of damages suffered by Plaintiff and the Class;

i.    Whether Roku's conduct violates principles of quasi-contract;

j.    Whether Roku's conduct caused Roku to be unjustly enriched;

k.    The amount of restitution to which Plaintiff and the Class are entitled;

l.    Whether Plaintiff and the California Subclass members are entitled to treble and/or punitive damages; and

m.    Whether Plaintiff and the Class are entitled to a reasonable award of attorneys' fees, interest, and costs of suit.

55.    Plaintiff's claims are typical of the claims of the members of the Class they seek to represent because Plaintiff purchased at least one Roku Camera and had access to Motion Alerts with Motion Snapshots until July 16, 2025.

56.    Plaintiff will adequately represent and protect the interests of the Class and has no interests that conflict with or are antagonistic to the interests of Class members.    Plaintiff has retained attorneys who are experienced and capable of prosecuting class actions and complex litigation.    Plaintiff's attorneys will actively conduct and be responsible for prosecuting this litigation, and have adequate resources, experience, and commitment to litigate this matter.

57.    A class action is superior to any other method available for the fair and efficient adjudication of this controversy because it would be impractical and unduly burdensome for each of the individual Class members to bring a separate action. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the respective Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. Moreover, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

CLASS ACTION COMPLAINT

58.    Defendant has acted on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

59.    Class certification is also appropriate because there is a readily identifiable class on whose behalf this action can be prosecuted. Class members are readily ascertainable from Roku's records. A notice of pendency or resolution of this class action can be provided to Class members by direct mail, email, publication notice, or other similar means.

60.    To the extent reliance is an element of any of the claims asserted herein, Plaintiff and all Class members uniformly have relied on Defendant's conduct.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT, INCLUDING BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of the Class and the California Subclass)

61.    Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

62.    In purchasing and using Roku Cameras, Plaintiff and the Class entered into a valid and enforceable contract with Roku.

63.    One element of the valuable consideration that Roku agreed to provide to Plaintiff and the Class was access to and use of the Motion Snapshots without meaningful disruption.

64.    Plaintiff and the Class performed their obligations under the contract. They registered for online Roku accounts and abided by the terms of service that Roku imposed.  They paid the purchase price for Roku Cameras, including for the Motion Snapshots feature providing still images of detected motion or sound that corresponded with Motion Alerts.

65.    Plaintiff and the Class used the Roku Cameras in a reasonably foreseeable manner and in accordance with all applicable terms.

CLASS ACTION COMPLAINT

66.     Roku committed material breaches of its contract with Plaintiff and the Class by suspending access to the Motion Snapshot feature.

67.     In addition, a covenant of good faith and fair dealing is implied by law in all contracts and requires that Roku exercise contractual discretion honestly and in good faith. The covenant of good faith and fair dealing requires that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.

68.     Roku breached the covenant of good faith when it exercised its discretion to unilaterally and intentionally remove the Motion Snapshot feature, as described above, rendering the devices less functional and less valuable. In so doing, Roku undermined Plaintiff and Class Members' right to receive the benefit of the bargain.

69.     Roku's suspension of the Motion Snapshot feature rendered the Roku Cameras materially less valuable than promised.

70.     Plaintiff and the Class suffered actual damages from Defendant's breach.

## COUNT II
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(California Commercial § 2314(2)(f))**
**(On Behalf of the Class and the California Subclass)**

71.     Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

72.     At all relevant times, Plaintiff and the Class used Roku Cameras in their intended manner and for their intended purpose.

73.     Pursuant to California's implied warranty of merchantability statute, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code§ 2314(1). The statute provides that "[g]oods to be merchantable must be at least such as . . . (f)

1  [c]onform to the promises or affirmations of fact made on the container or label if any."

2  Cal. Com. Code § 2314(2)(f).

3      74.    Roku is a merchant with respect to the sale of Roku Cameras.  Therefore,

4  a warranty of merchantability is implied in every contract for sale of Roku Cameras to

5  California consumers.

6      75.    Roku implicitly warranted, through direct-to-consumer marketing,

7  advertisements, and packaging labels, that its Roku Cameras allowed users to receive

8  Motion Alerts with Motion Snapshots, without the purchase of any subscription.

9  Because Roku removed the Motion Snapshots feature, the Roku Cameras no longer,

10 "conform to the promises or affirmations of fact made on the container or label." Cal.

11 Com. Code § 2314(2)(f).

12     76.    Therefore, the Roku Cameras are not merchantable under California law

13 and Roku has breached its implied warranty of merchantability with respect to the Roku

14 Cameras.

15     77.    If Plaintiff and the Class had known that the Motion Snapshots feature

16 would be removed from their Roku Cameras, they would not have been willing to pay

17 the premium price associated with that feature or would not have purchased them at

18 all.  Therefore, as a direct and/or indirect result of Roku's breach, Plaintiff and the

19 Class have suffered injury and deserve to recover all damages afforded under the law.

20                          <u>COUNT III</u>
21 **VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES
   ACT,**
22 **(Cal. Civ. Code §§ 1750, et seq.)**
   **(On Behalf of the Class and the California Subclass)**
23

24     78.    Plaintiff re-alleges and incorporates all other factual allegations set forth

25 in this Complaint.

26     79.    The conduct of Defendant alleged above constitutes an unfair method of

27 competition and unfair or deceptive act or practice in violation of the Consumers Legal

28 Remedies Act, Cal. Civ. Code § 1750, *et seq*. ("CLRA").

CLASS ACTION COMPLAINT

80.    Defendant's Roku Cameras are "goods" as defined by Cal. Civ. Code § 1761(a).

81.    Defendant is a person under Cal. Civ. Code § 1761(c).

82.    Plaintiff and the Class are consumers under Cal. Civ. Code § 1761(d).

83.    Plaintiff's purchases of Roku Cameras were "transactions" under Cal. Civ. Code § 1761(e).

84.    Defendant's conduct constitutes unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer, in violation of the CLRA, as follows:

a.  Cal. Civ. Code § 1770(a)(5) ("Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.");

b.  Cal. Civ. Code § 1770(a)(7) ("Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.");

c.  Cal. Civ. Code § 1770(a)(9) ("Advertising goods or services with intent not to sell them as advertised.");

d.  Cal. Civ. Code § 1770(a)(14) ("Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."); and

e.  Cal. Civ. Code § 1770(a)(16) ("Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.").

85.    These misrepresentations and omissions set forth above are of material facts that a reasonable person would have considered important in deciding whether or

1   not to purchase Defendant's goods. Plaintiff and the Class justifiably and uniformly

2   acted or relied upon Defendant's misrepresentations and omissions to their detriment.

3       86.    Plaintiff and the other members of the Class have been, and/or continue

4   to be, injured as a direct and proximate result of Defendant's violations of the CLRA.

5       87.    Plaintiff is entitled to pursue a claim against Defendant to enjoin

6   Defendant from continuing its unfair or deceptive acts or practices under Cal. Civ.

7   Code § 1780(a) and § 1781, as well as to pursue costs and attorneys' fees under §

8   1780(e).

9       88.    Under the requirements of California Civil Code §1782(a), Plaintiff will

10   serve on Defendant a CLRA notice letter. If Defendant does not rectify these issues

11   within the time period provided by the CLRA, Plaintiff will amend this Complaint to

12   assert claims for additional relief.

### COUNT IV
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(the "UCL") UNFAIR PRONG**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**
**(On Behalf of the Class and the California Subclass)**

       89.    Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

       90.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice." Roku's conduct related to representing that its Roku Cameras were equipped with Motion Snapshots, which was marketed as a key surveillance feature for home security, violates the statute's "unfair" prong.

       91.    The UCL imposes strict liability. Plaintiff need not prove that Roku intentionally or negligently engaged in unfair business practices—but only that such practices occurred.

       92.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or

substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

93.    Roku committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by unilaterally removing the Motion Snapshots feature from all Roku Cameras, rendering the Roku Cameras significantly less functional long before the expiration of its useful life, a practice known as "bricking."

94.    "Bricking" has been specifically called out by the FTC as a potentially unfair business practice because consumers have no choice in the matter.

95.    As explained by the FTC, the failure to disclose the duration of a product's software support constitutes "unfair" conduct and "violates the FTC Act" because it results in unavoidable harm to consumers and causes them substantial injury.

96.    Roku's affirmative action of stripping its Roku Cameras of their Motion Snapshot function long before the expiration of their useful life imposes a financial detriment to consumers while benefitting Defendant.

97.    Roku affirmatively and knowingly represented that its Roku Cameras were equipped with Motion Snapshots, which was marketed as a key surveillance feature for home security, but then subsequently removed the feature on all Roku Cameras for those without a Roku Subscription on July 16, 2025.

98.    Defendant's acts and practices offend an established public policy in the marketplace and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

99.    The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

100.    Defendant has engaged in unfair competition and unfair business practices by its misconduct and omissions described above, and by knowingly and intentionally

concealing from Plaintiff and Class Members that the Roku Cameras would be rendered less functional by Roku.

101.   Plaintiff and Class Members acted reasonably when they relied on Roku's misrepresentations and omissions in purchasing the Roku Cameras.

102.   Had Plaintiff and Class Members known that Defendant would render the Roku Cameras less functional by removing the Motion Snapshots feature, they would have paid less for the Roku Cameras or would not have purchased them at all.

103.   As a direct and proximate result of Roku's unfair practices, Plaintiff and Class Members have suffered damages.

104.   Roku has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class Members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

105.   **Inadequate remedy at law.** Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt and certain and in other ways as efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff and Class Members fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money the defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law. Due to these differences in proof and certainty, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law for damages. Even if legal remedies may be available,

1  Plaintiff seeks equitable remedies in the alternative to legal remedies which are as of

2  yet uncertain.

3      106.   Legal remedies available to Plaintiff and Class Members are inadequate

4  because they do not address likely future harms. As of the date of this filing, Roku has

5  failed to restore the software functionality for the Motion Snapshots function on the

6  Roku Cameras. If Roku is not ordered to take these or similar actions, Roku will

7  continue to injure Plaintiff and Class Members through the misconduct alleged herein.

8                              **COUNT V**
   **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
9                   **(the "UCL") FRAUDULENT PRONG**
                 **(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**
10         **(On Behalf of the Class and the California Subclass)**

11

12     107.   Plaintiff re-alleges and incorporates all other factual allegations set forth

13  in this Complaint.

14     108.   California Business & Professions Code § 17200 prohibits "unfair

15  competition," including any "unlawful, unfair, or fraudulent business act or practice."

16  Roku's conduct related to deceptively representing that its Roku Cameras provided the

17  Motion Snapshots feature, violates the statute's "fraudulent" prong.

18     109.   The UCL imposes strict liability. Plaintiff need not prove that Roku

19  intentionally or negligently engaged in fraudulent business practices—but only that

20  such practices occurred.

21     110.   A business practice is "fraudulent" under the UCL if it is likely to deceive

22  members of the public.

23     111.   Roku committed fraudulent business acts and practices in violation of Cal.

24  Bus. & Prof. Code § 17200, *et seq*., by affirmatively and knowingly misrepresenting

25  that its Roku Cameras were equipped with Motion Snapshots, which was marketed as

26  a key surveillance feature for home security, but then subsequently removed the feature

27  on all Roku Cameras.

28

CLASS ACTION COMPLAINT

112. Defendant has engaged in fraudulent business practices by its misconduct and omissions described above, and by knowingly and intentionally concealing from Plaintiff and Class Members that Roku Cameras would be rendered less functional by Roku.

113. Plaintiff and Class Members acted reasonably when they relied on Roku's misrepresentations and omissions in purchasing the Roku Cameras.

114. Had Plaintiff and Class Members known that Defendant would render the Roku Cameras less functional by removing the Motion Snapshots feature, they would have paid less for the Roku Cameras or would not have purchased them at all.

115. As a direct and proximate result of Roku's fraudulent practices, Plaintiff and Class Members have suffered damages.

116. Roku has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class Members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

117. **Inadequate remedy at law.** Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt and certain and in other ways as efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff and Class Members fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money the defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law. Due to these

differences in proof and certainty, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law for damages. Even if legal remedies may be available, Plaintiff seeks equitable remedies in the alternative to legal remedies which are as of yet uncertain.

118.   Legal remedies available to Plaintiff and Class Members are inadequate because they do not address likely future harms. As of the date of this filing, Roku has failed to restore the software functionality for the Motion Snapshots function on the Roku Cameras. If Roku is not ordered to take these or similar actions, Roku will continue to injure Plaintiff and Class Members through the misconduct alleged herein.

## COUNT VI
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (the "UCL") UNLAWFUL PRONG
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)
### (On Behalf of the Class and the California Subclass)

119.   Plaintiff re-alleges and incorporate all other factual allegations set forth in this Complaint.

120.   California Business & Professions Code § 17200 prohibits "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice." Roku's conduct related to deceptively representing that its Roku Cameras provided the Motion Snapshots feature, violates the statute's "unlawful" prong.

121.   The UCL imposes strict liability. Plaintiff need not prove that Roku intentionally or negligently engaged in fraudulent business practices—but only that such practices occurred.

122.   A business practice is "unlawful" under the UCL if it violates any other law or regulation.

123.   Roku committed unlawful business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly misrepresenting that its Roku Cameras were equipped with Motion Snapshots, which was marketed as

a key surveillance feature for home security, but then subsequently removed the feature on all Roku Cameras.

124.    Roku's conduct constitutes an "unlawful" act under the UCL, because as alleged herein, it also constitutes violations of California's False Advertising Law (the "FAL") and Consumer Legal Remedies Act (the "CLRA"), amongst other claims.

125.    Defendant has engaged in unfair competition and unlawful business practices by its misconduct and omissions described above, and by knowingly and intentionally concealing from Plaintiff and Class Members that Roku Cameras would be rendered less functional by Roku.

126.    Plaintiff and Class Members acted reasonably when they relied on Roku's misrepresentations and omissions in purchasing the Roku Cameras.

127.    Had Plaintiff and Class Members known that Defendant would render the Roku Cameras less functional by removing the Motion Snapshots feature, they would have paid less for the Roku Cameras or would not have purchased them at all.

128.    As a direct and proximate result of Roku's unlawful practices, Plaintiff and Class Members have suffered damages.

129.    Roku has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class Members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

130.    **Inadequate remedy at law.** Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt and certain and in other ways as efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff and Class Members fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money the defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a

plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law. Due to these differences in proof and certainty, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law for damages. Even if legal remedies may be available, Plaintiff seeks equitable remedies in the alternative to legal remedies which are as of yet uncertain.

131.    Legal remedies available to Plaintiff and Class Members are inadequate because they do not address likely future harms. As of the date of this filing, Roku has failed to restore the software functionality for the Motion Snapshots function on the Roku Cameras. If Roku is not ordered to take these or similar actions, Roku will continue to injure Plaintiff and Class Members through the misconduct alleged herein.

**COUNT VII**
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW (the "FAL")**
**(Cal. Bus. & Prof. Code § 17500, *et seq.*)**
**(On Behalf of the Class and the California Subclass)**

132.    Plaintiff re-alleges and incorporates and all other factual allegations set forth in this Complaint.

133.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public outcry or proclamation, or in any other manner or means whatsoever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

134.    Defendant's material misrepresentations and omissions about the Roku Camera's Motion Snapshots feature as alleged. Herein violates Bus. & Prof. Code § 17500.

135.    Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

136.    Plaintiff and the Class Members seek an order requiring Defendant to award them restitution of the money wrongfully acquired by Defendant as a means of said misrepresentations.

137.    Additionally, Plaintiff and Class Members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

138.    Plaintiff incorporates by reference their allegations above regarding the potential inadequacies of remedies at law.

### COUNT VIII
### VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT
### (18 U.S.C. § 1030, *et seq*.)
### (On Behalf of the Class)

139.    Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

140.    Roku caused Plaintiff and the Class to download and install software updates on their Roku Cameras without informing them that the software updates contained code that would remove the Motion Snapshots feature, diminishing the Roku Cameras' utility and performance.  Plaintiff and the Class did not give Roku permission to remove the Motion Snapshots feature—nor could they—as Roku did not provide material information to Plaintiff and the Class regarding the updates.

141.    Roku violated 18 U.S.C. § 1030(a) by knowingly causing the transmission of software updates to Plaintiff and the Class's devices to access, collect, and transmit information to the Roku Cameras, which are protected computers as defined in 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate commerce and/or communication.  By transmitting information to Plaintiff and the Class's Roku

CLASS ACTION COMPLAINT

Cameras, Roku intentionally caused damage without authorization to the Class's Roku Cameras by impairing the ability of the Roku Cameras to operate as warranted, represented, and advertised.

142.    Roku violated 18 U.S.C. § 1030(a)(5)(A)(iii) by intentionally accessing Plaintiff and the Class's Roku Cameras—protected computers—without authorization, and as a result, caused damage to Plaintiff and the Class's Roku Cameras by impairing the integrity of those Roku Cameras.

143.    Roku's conduct has caused loss to Plaintiff and the Class in real, economic damages. Plaintiff and the Class have additionally suffered loss by reason of these violations, in terms of added expense in operating their Smart Cameras, which have been throttled, or in the purchase of new, unthrottled security cameras.

144.    Unless Roku is restrained and enjoined, Roku will continue to keep Roku Cameras hindered by this current and future software updates. Plaintiff's remedy at law is thus inadequate to compensate for these inflicted and threatened injuries, entitling Plaintiff to remedies including injunctive relief as provided by § 1030(g).

145.    Plaintiff and the Class seek all monetary and non-monetary relief allowed by law, including damages and punitive damages, an order enjoining the acts and practices described above, attorneys' fees, and costs under the Consumer Fraud and Abuse Act.

<u>**COUNT IX**</u>
**BREACH OF QUASI-CONTRACT AND UNJUST ENRICHMENT**
**(On Behalf of the Class and the California Subclass)**

146.    Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

147.    Plaintiff and the Class conferred a benefit on Roku by purchasing their Roku Cameras for more than Plaintiff and the Class should have rightfully paid based on Defendant's subsequent removal of the Motion Snapshots feature as alleged herein.

1   Defendant knowingly removed the Motion Snapshots feature and unjustly profited
2   from doing so.

3       148.   In the absence of a contract, Plaintiff and the Class have no adequate
4   remedy at law.

5       149.   Defendant's unjust enrichment can be remedied by ordering Defendant to
6   provide restitution, and to disgorge into a common fund or constructive trust, for the
7   benefit of Plaintiff and the Class, all proceeds received from Plaintiff and the Class as
8   a result of the unlawful and/or inequitable conduct described herein.

9                              **COUNT X**
                      **TRESPASS TO CHATTELS**
10         **(On Behalf of the Class and the California Subclass)**

11      150.   Plaintiff re-alleges and incorporate all other factual allegations set forth in
12   this Complaint.

13      151.   At all relevant times alleged herein, Plaintiff and similarly situated Class
14   Members were owners of and in possession of Defendant's Roku Cameras.

15      152.   In or around July 16, 2025, Roku unlawfully took from Plaintiff's and
16   Class Members' possession an operational Roku Camera through its forced removal of
17   the Motion Snapshot feature from those users without a Roku Subscription, leaving
18   Plaintiff and Class Members with a significantly less useful product.

19      153.   As a result of Defendant's unlawful taking of the property, Plaintiff and
20   Class Members each sustained damages.

21                        **PRAYER FOR RELIEF**

22      WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated,
23   request that the Court award the following relief:

24      A.     Certify this action as a class action, appoint Plaintiff as the Class
25   representative, and designate the undersigned as Class counsel;

26      B.     Declare Defendant's conduct unlawful;

27      C.     Enjoin Defendant from the unlawful conduct alleged herein;

28

D.      Award Plaintiff and the Classes damages under common law and/or by statute, including treble and/or punitive damages;

E.      Award Plaintiff and the Classes restitution and/or disgorgement;

F.      Award Plaintiff attorney's fees, costs, and pre-judgment and post-judgment interest; and

G.      Grant such other and further relief as the Court may deem just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff and the Classes demand a trial by jury on all triable issues.

Dated:  March 5, 2026                                        **KALIELGOLD PLLC**

By:*/s/ Sophia Goren Gold*
Sophia G. Gold (SBN 307971)
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-483
sgold@kalielgold.com

Jeffrey D. Kaliel (SBN 238293)
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

Phillip M. Black (SBN 308619)
**WOLF POPPER LLP**
*pblack@wolfpopper.com*
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600

*Attorneys for Plaintiff and
the Putative Class*

CLASS ACTION COMPLAINT